# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARD GUEVARA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 12-01988 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

　　　　Plaintiff Bernard Guevara filed this action on March 14, 2012.  (Dkt. No. 3.)  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on March 29 and April 12, 2012.  (Dkt. Nos. 8, 9.)  On November 1, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

　　　　Having reviewed the entire file, the court reverses the decision of the Commissioner and remands this matter for proceedings consistent with this opinion.

## I.

## **PROCEDURAL BACKGROUND**

On May 3, 2010, Guevara filed an application for disability insurance benefits, alleging an onset date of July 10, 2009. Administrative Record ("AR") 19, 117-20. The application was denied. AR 19, 67. Guevara requested a hearing before an Administrative Law Judge ("ALJ"). AR 76. On June 30, 2011, an ALJ conducted a hearing at which Guevara and a vocational expert ("VE") testified. AR 37-59. On July 21, 2011, the ALJ issued a decision denying benefits. AR 19-32. On February 7, 2012, the Appeals Council denied the request for review. AR 1-4. This action followed.

## II.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Guevara has the severe impairments of degenerative disc disease of the lumbar spine, depression/anxiety, obesity, and alcohol abuse. AR 21. Guevara does not have an impairment or combination of impairments that meets or equals a listing. AR 22. Guevara has the residual functional capacity ("RFC") to perform light work, except he must be allowed to alternate sitting and standing at will. AR 24. He can occasionally climb, balance, stoop, kneel, crouch or crawl; can follow simple instructions and make simple decisions; can perform goal-oriented but not production-pace work; and can have occasional contact with supervisors, coworkers, and the public. *Id.* He is unable to perform his past relevant work, but there are jobs that exist in significant numbers in the national economy that he can perform. AR 30-31.

### C. Treating Physicians

Guevara contends the ALJ failed to give "appropriate weight" to the opinions of Dr. Janoian and Dr. Yegiazaryan, his treating physicians.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v.*

*Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

### 1.   Dr. Janoian

On June 13, 2011, Dr. Janoian completed a Physical RFC Questionnaire. AR 539-43.  He stated that he had treated Guevara since November 2010 and saw him every two months.  AR 539.  He diagnosed Guevara with back disorder, arthritis knee, and depressive psychosis.  *Id.*  He listed clinical findings of "C/S, T/S, L/S, tenderness to palp., severe pain w/ motion, tenderness, pain w/ motion in b/l knees." *Id.*  He stated that Guevara's pain or other symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks.  AR 540.  Guevara is incapable of even "low stress" jobs because of his depressive disorder, anxiety, and psychosis.  *Id.*  He could sit or stand for 20 minutes at a time, could stand or walk less than two hours a day, and sit for about two hours a day.  AR 540-41.  He needs to walk every 30 minutes for five minutes each time.  AR 541.  He needs to shift positions at will from sitting, standing or walking.  *Id.*  He needs to take unscheduled breaks every hour.  *Id.*  With prolonged sitting, his legs need to be elevated 50% of the time.  *Id.*  Guevara can occasionally lift and carry 10 pounds, rarely lift and carry 20 pounds, and never lift and carry 50 pounds.  *Id.*  He can occasionally stoop and climb stairs, rarely twist, and never crouch, squat or climb ladders.  AR 542.

4

He would be absent from work as a result of his impairments more than four days per month. *Id.*

The record includes Dr. Janoian's treatment notes from November 2010 through May 2011. AR 508-524. On November 16, 2010, Dr. Janoian evaluated Guevara's lumbar spine and noted antalgic gait on right but not broad-based, ability to heel-and-toe walk, normal muscle tone, no spasm, no mid-line spinous or paraspinous tenderness, tenderness on the right sciatic notch, motion without pain, crepitus, or evident instability, negative Patrick's Faber, seated SLR on the right with leg pain, pain free active ROM, and no back or leg pain with femoral stretch. AR 522-23. The psychiatric examination was normal except that Guevara was anxious because of his loss of insurance. AR 523. Dr. Janoian assessed Guevara with back disorder NOS, chronic; anxiety state NOS; depression psychosis, mild; and hypertension NOS. AR 523-24. On January 14, 2011, Dr. Janoian noted cervical spine muscle spasm, thoracic spine and lumbar spine tenderness and severe pain with motion, and no joint deformity and full range of motion in knees. AR 517. The psychiatric examination was normal except Guevara was anxious. AR 518. Dr. Janoian assessed Guevara with hypertension NOS, anxiety state NOS, and back disorder NOS. *Id.* On March 17, 2011, Dr. Janoian noted no cervical or thoracic spine tenderness, lumbar spine tenderness and mild pain with motion, right and left knee tenderness and severe pain with motion, and no joint deformity and full range of motion in knees. AR 513-14. The left knee had active painful ROM. AR 514. He assessed Guevara with arthritis, knee, acute; back disorder NOS; anxiety state NOS; and hypertension NOS. AR 514. On May 16, 2011, Dr. Janoian noted no cervical spine tenderness, thoracic spine and lumbar spine tenderness and severe pain with motion, and tenderness in knees and moderate pain with motion. AR 509-10. The psychiatric examination was normal except Guevara was anxious. AR

510. Dr. Janoian assessed Guevara with hypertension NOS; wheezing; anxiety state NOS; back disorder NOS; and arthritis, knee. *Id.*

The ALJ recognized Dr. Janoian as a treating physician and discussed his findings. AR 27, 29-30. He gave "less weight" to Dr. Janoian's opinion because Dr. Janoian took Guevara's subjective complaints at "face value," and his opinion was inconsistent with the findings of Dr. Wallack, a consultative examiner; the RFC evaluation by Dr. Bell, a non-examining review physician; and electrodiagnostic findings from August 2009, "which do not support the severity of the radiculopathy alleged by [Guevara]." AR 30.

The record does not support the ALJ's finding that Dr. Janoian took Guevara's relatively benign subjective complaints at face value. At the November 2010 visit, Guevara reported a moderate activity level, including swimming and exercising 2-3 times a week, and had no complaints. AR 521, 523. At the January 2011 visit, Guevara reported that medication controlled his chronic back spasms and anxiety. AR 516, 518. At the March 2011 visit, Guevara reported back pain, knee pain, and anxiety, all controlled with medication. AR 512, 514. At the May 2011 visit, Guevara reported shooting and stabbing back pain relieved by medication, arthritis in the knee controlled by medication, and anxiety controlled by medication. AR 508, 510. As Guevara argues, Dr. Janoian may have relied on objective evidence to form his opinion. JS 13; AR 198, 233, 257, 260, 403, 442, 446, 510, 513, 517, 547. However, because the ALJ did not discount Dr. Janoian's opinion based on the objective evidence, the court cannot consider this reason. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 n.2 (9th Cir. 2008); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

The ALJ also discounted Dr. Janoian's opinion because it was inconsistent with the findings of Dr. Wallack and Dr. Bell, which the ALJ had discounted "because the substantial evidence indicates [Guevara] is more limited than [they]

6

found." AR 30.  On September 16, 2010, Dr. Wallack examined Guevara and diagnosed him with persistent low back pain, status post lumbar disc surgery, with no gross neurological or orthopedic deficits; and swelling adjacent to the right hip, possible lipoma.  AR 457.  He found full range of motion in the back, negative straight leg raising, no gross neurological or orthopedic deficits.  AR 456-57.  He opined that Guevara has no limitations in his ability to stand, walk, sit, lift, carry, climb, balance, stoop, kneel, crouch or crawl.  AR 27, 458.  Dr. Bell opined that Guevara could perform medium work, but can frequently climb, balance, kneel, crouch, crawl, and occasionally stoop.  AR 27, 491-92.

The Commissioner argues that even though the ALJ discounted the opinions of Dr. Wallack and Dr. Bell, their opinions can constitute substantial evidence and can be used by the ALJ to discount Dr. Janoian's opinion.  JS 16; *see Orn*, 495 F.3d at 631 (stating an examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (stating a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it).  Here, the ALJ did not articulate any reason supported by substantial evidence in the record for giving less weight to Dr. Janoian's opinion than to Dr. Wallack's and Dr. Bell's opinions, which he had already discounted as being inconsistent with the substantial evidence.

Although substantial evidence may support the ALJ's finding that the August 2009 electrodiagnostic findings do not support Guevara's allegations, the ALJ failed to mention the electrodiagnostic tests from February and April 2010.  The 2010 electrodiagnostic tests showed abnormal NCV/SSEP of the lower extremities in a pattern consistent with a right L5 radiculopathy, and an abnormal EMG of the lumbar spine and lower extremities in a pattern consistent with a right L5 radiculopathy.  AR 400, 545-46, 556.

The ALJ did not provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Janoian's opinions. Remand is appropriate.

### 2. Dr. Yegiazaryan

Dr. Yegiazaryan completed a Mental RFC Questionnaire on May 26, 2011. AR 525-29. She diagnosed Guevara with Bipolar I disorder and a Global Assessment of Functioning ("GAF") score of 43.[1] AR 525. She stated that Guevara has problems with memorizing simple instructions, concentrating, receiving criticism from supervisors, participating in group activities, and working with others. AR 527-28. Guevara would be absent from work more than four days per month due to his impairments. AR 529. His "current symptoms disable [him] from working at a regular job." *Id.*

The ALJ assigned "little weight" to Dr. Yegiazaryan's opinion that Guevara is seriously limited but not precluded from several areas of work because it was not supported by objective evidence and did not "sufficiently consider [Guevara's] long history of alcohol abuse." AR 29. An ALJ may discount a treating physician's unsupported opinion. *Orn*, 495 F.3d at 631-32; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ did not err in rejecting treating physician's opinion unsupported by objective medical findings).

Although the record contains Dr. Yegiazaryan's findings from her initial assessment from April 21, 2011 and treatment notes from May 19, 2011, her findings do not support the functional limitations. AR 531-38. In the April 2011 initial assessment, Dr. Yegiazaryan performed a mental status evaluation. AR 537. She found Guevara stable and well groomed. *Id.* He had normal eye

---

[1] A GAF score of 43 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV-TR 34.").

8

contact, calm motor activity, unimpaired speech, unimpaired intellectual functioning, and average fund of knowledge. *Id.* He was oriented. *Id.* His remote memory was impaired, but not his immediate or recent memory. *Id.* He had visual and auditory hallucinations, but no apparent thought process disturbances except for poor serial 7's. *Id.* He had paranoid delusions and isolative behavior, but no behavioral disturbances. *Id.* He denied suicidal/homicidal ideation. *Id.* Dr. Yegiazaryan diagnosed Guevara with mood disorder NOS and alcohol dependence, rule out substance induced, rule out bipolar disorder, rule out MDD with psychotic features. AR 538. She diagnosed a GAF of 43. *Id.* In the May 2011 treatment notes, Dr. Yegiazaryan assessed a history of mood disorder NOS, psychosis NOS, rule out bipolar disorder type I with psychosis, and alcohol dependence. AR 533. The objective evidence did not support Dr. Yegiazaryan's opinion that Guevara suffered from such serious impairments.

The ALJ gave "some weight" to the opinion of the examining psychiatrist, Dr. Ritvo, who examined Guevara on September 21, 2010. AR 29; 569-73. An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings. *Orn*, 495 F.3d at 631. Dr. Ritvo diagnosed Guevara with no disorder and a GAF score of 70.[2] AR 572-73. Based on the unremarkable mental status examination, he opined that Guevara had "no impairment" in his ability to understand, remember, or complete simple or complex commands, interact appropriately with supervisors, coworkers or the

---

[2] A GAF score of 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social occupational, or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR 34.

9

public, comply with job rules, respond to change in the normal workplace setting, or maintain persistence and pace in a normal workplace setting.[3] AR 573.

As Guevara argues, and the Commissioner acknowledges, Dr. Yegiazaryan was aware of Guevara's history of alcohol dependence and noted it in her treatment notes, initial assessment, and Mental RFC Questionnaire. AR 526, 532-33, 538. The ALJ's finding that Dr. Yegiazaryan did not "sufficiently consider" Guevara's history of alcohol abuse is not supported by substantial evidence. Any error was harmless because the lack of supporting objective evidence was a specific and legitimate reason supported by substantial evidence in the record for discounting Dr. Yegiazaryan's opinion.[4]

### D. Credibility

Guevara contends the ALJ failed to articulate legally sufficient reasons for rejecting his symptom testimony.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Guevara's "medically

---

[3] Interestingly, the ALJ gave "little weight" to the October 14, 2010 opinion of the non-examining review psychologist, Dr. Cochran, "because the substantial evidence indicates [Guevara] is more limited than [Dr. Cochran] found." AR 29-30, 462-74. Dr. Cochran diagnosed Guevara with depression and generalized anxiety disorder, not severe. AR 462, 465, 467. He concluded that Guevara's mental condition "poses no more than a minimal impairment on his ability to do work related activities." AR 474.

[4] The Commissioner argues that the ALJ properly discounted Dr. Yegiazaryan's opinion because it was "internally inconsistent." JS 16. However, because the ALJ did not articulate this reason, the court cannot consider it. *Tommasetti,* 533 F.3d at 1039 n.2; *Connett,* 340 F.3d at 874.

determinable impairments could reasonably be expected to cause the alleged symptoms." AR 25.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn*, 495 F.3d at 635 (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id*. (citation and quotation marks omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Regulation ("SSR") 88-13) (quotation marks omitted).[5] The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

---

[5] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (footnotes omitted).

11

Here, the ALJ found Guevara "only partially credible to the extent his allegations are objectively supported in the record." AR 30. The ALJ reasoned that Guevara's allegations were internally inconsistent and the medical evidence did not support the extent of Guevara's alleged functional limitations. AR 29-30.

An ALJ may consider inconsistencies in a claimant's statements when weighing a claimant's credibility. *Thomas*, 278 F.3d at 958-59. However, the ALJ's findings need to be sufficiently specific to allow a reviewing court to determine that the decision to reject the testimony was not arbitrary. *Bunnell*, 947 F.2d at 345; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ notes that the extent of Guevara's "physical impairments and the functional limitations they cause vary among [his] presentations and allegations," but the ALJ does not specify what he finds internally inconsistent about Guevara's allegations. AR 29-30. The Commissioner argues that Guevara's use of a cane and statements about his alcohol intake were inconsistent. JS 9-10. However, because the ALJ did not articulate these reasons, the court cannot consider them. *Tommasetti*, 533 F.3d at 1039 n.2; *Connett*, 340 F.3d at 874. The ALJ's unexplained finding is not sufficiently specific to enable review by this court.

Although lack of medical evidence is a factor the ALJ may consider in the credibility analysis, it cannot form the sole basis for discounting subjective allegations. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). It being the sole remaining basis for discounting Guevara's subjective allegations, the ALJ erred. On remand, the ALJ must reevaluate Guevara's credibility.

### E. Step Five of the Sequential Analysis

Guevara contends the ALJ erred at Step Five because he did not make the appropriate inquiries into the VE's testimony.

At Step Five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the Commissioner cannot meet this burden, the claimant is disabled and entitled to disability benefits. *Id.*

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.*

"[A]n ALJ may [not] rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the [Dictionary of Occupational Titles] ("DOT")."[6] *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1234 (9th Cir. 2009). SSR 00-4p requires the ALJ to "first determine whether a conflict exists" between the DOT and the vocational expert's testimony, and "then determine whether the [VE's] explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Massachi*, 486 F.3d at 1153.

In evaluating the VE's explanation for the conflict, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. The ALJ's explanation is satisfactory if the ALJ's factual findings support a deviation from the DOT and "persuasive testimony of available job categories" matches "the specific requirements of a designated occupation with the specific abilities and limitations of the claimant." *Id.* at 1435. Remand may not be

---

[6] The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

13

necessary if the procedural error is harmless, i.e., when there is no conflict or if the VE provided sufficient support for her conclusion to justify any potential conflicts. *Massachi*, 486 F.3d at 1154 n.19.

The ALJ found that Guevara could perform goal-oriented but not production-pace work and must be allowed to alternate sitting and standing at will. AR 24. The VE testified that Guevara could perform work as a garment folder, DOT 789.687-066, marker, DOT 209.587-034, or cleaner, DOT 709.687-010. AR 31, 55. He testified that the garment folder, marker, and cleaner jobs are not considered "production oriented type of work." AR 58. Based on the VE's testimony, the ALJ determined that Guevara could perform other work that exists in significant numbers in the national economy. AR 31-32.

Guevara argues that the ALJ did not inquire whether the VE's testimony conflicted with the DOT. JS 19. He also argues that the VE's testimony was ambiguous regarding "production oriented," versus "goal-oriented but not production-pace," jobs. *Id.* The Commissioner argues that the VE's testimony does not "facially conflict" with the DOT job descriptions, and the testimony was not ambiguous. JS 20-21. In Guevara's Reply, he argues that the at-will sit/stand option conflicts with the DOT. JS 21.

The DOT classifies garment folder, marker, and cleaner as "light work," which may require "walking or standing to a significant degree," "sitting most of the time, but entail[ing] pushing and/or pulling of arm or leg controls," and/or "working at a production rate pace entailing the constant pushing and/or pulling of materials." DICOT 789.687-066, 1991 WL 681266, DICOT 209.587-034, 1991 WL 671802, DICOT 709.687-010, 1991 WL 679134. The VE testified that the garment folder, marker, and cleaner jobs "would allow sit-stand . . . as long as one doesn't wander off from their work station." AR 58. There does not appear to be a conflict between the VE's testimony and the DOT.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 28, 2013

ALICIA G. ROSENBERG
United States Magistrate Judge